Next case is 16-2103 David Goethel et al. v. US Dept of Commerce et al. May it please the Court, Julie Smith for Cause of Action Institute, representing Appellants David Goethel and Northeast Fisheries Sector 13. I'd like to reserve four minutes of my time to rebuttal today. Thank you. Your Honors, we're here this morning because the District Court below erred in holding, first, that the Appellant's claims were time barred under Section 1855F of the Magnuson-Stevens Act, and second, that the Government did not exceed its authority under Magnuson-Stevens in enacting the requirement that fishermen and the Northeast Fishery must pay for at-sea monitors. To the first point, the timeliness of the suit. The Court's ruling is erroneous because the suit was timely filed within 30 days of the Agency's November 10, 2015 implementing action under Section 1855F, and even if the review under Section 1855F is not available, for instance, if this Court believes that publication in the Federal Register is required for Section 1855F review, then the plaintiff appellants were entitled to pre-enforcement review of the Agency action under APA Section 704, because it's a final Agency action for which there is no other adequate remedy in a court. Does your jurisdictional argument apply equally to all your claims? Because as I understand your Fourth Amendment claim, you're challenging in the Fourth Amendment claim not the imposed obligation to have a monitor on the boat, which you characterize as a search, analogizing it to the GPS in Jones. Well, that has been in place irrespective of who pays for quite a while, right, going back to the Amendment. So wouldn't the date by which you needed to seek review of that prior to, other than defending it in an enforcement action, have passed long before the time for challenging the change in who pays? Your Honor, I think it's fair to point out that our different claims, which I wasn't going to spend a lot of time on here today, might be subject to a different analysis. But you're trying to preserve, you're trying to hang on to the timeliness of your challenge to the payment issue. That's correct. That's correct. So, Your Honors, the government has conceded that the November 10, 2015 announcement had a practical effect on David Gaethel and the other fishermen, and it's attempted to differentiate that from a legal effect. But it had legal effects on the fishermen. Before the announcement, Gaethel could fish without paying for at-sea monitors without facing enforcement action for failure to pay. And with the announcement, the government said it made certain on which the legal consequences of the regulation would apply. But why isn't the way to respond to that practical effect argument something like this? Going back for, in fact, I've forgotten how many years there's been a regulation to the effect that the fishermen have got to pay. And simultaneously with the publication and republication of that regulation on several occasions, the fisheries, in effect, have said, look, it's your obligation, but we've got some money in the draw here. And as long as the money runs out, you know, we're going to be nice guys and use the money. So that the effect of the, I guess it was an email, wasn't it, saying, okay, now you've got to pay, in effect, is saying not that your obligations as a matter of law have changed, but simply that we're out of cash. And therefore, you've got to, we can't help you out any longer. Why isn't that the way to look at the sequence of events here? Your Honor, I would suggest that the way to look at that sequence of events is that, yes, there might have been an ability to challenge the regulations themselves in, I think, 2010 is when the fishery management plan was put into effect. Also in March and May of 2015, when a regulation was promulgated that stated that, yes, indeed, there was going to be some requirement for industry funding. But again, when the industry funding requirement comes into actual effect, that is a final agency action, Your Honor, to which the plaintiff and the appellants have a right to challenge. No, but I mean, that's the conclusion. And in effect, the action that you're challenging is action saying, we won't pay the bill for you anymore. The bill has been there since 2010 or since the most recent, what was it, republication in that year, which was more than 30 days ago. Your obligation hasn't changed. We're just not going to satisfy it for you anymore because we're out of money. And why does that announcement that we are no longer going to do it for you because we are out of money constitute an agency action which changes the legal relationship between the government and the fishermen? Because, Your Honor, the practical facts are that when the government was assisting in the payment of at-sea monitors, and in fact, for many years, it took it on entirely and completely, that rendered it less urgent for the fishermen to bring a challenge at that point. Yes, but that would be the case, and your argument would be the same, if the government had, in effect, properly promulgated its regulations saying, it's your obligation, but for some reason, because they were busy or whatnot, didn't enforce it. And then the day came when the government would say, okay, this has gone on long enough. We're going to enforce it. I take it you would say, at that point, that that was the point at which the 30 days began to run. I would say that that's one of the points. So government inattention would have the same effect as, in this case, the government informing that it was out of money, and therefore, you've got to pay what the regulations say you've got to pay. Your Honor, I would suggest that that would be another point at which there was an agency action which is subject to challenge. So inattention would start, the cessation of inattention, in enforcement, would start the 30 days running. The agency action in saying, okay, now we are going to begin in earnest enforcing this. But at the time the agency, the rule was promulgated that you were going to have, that your client was going to have to pay, you didn't know about agency inaction, did you? So why didn't the 30 days begin to run then? Because you didn't know that they weren't going to actually enforce their regulation. Your Honor, I would suggest that the 1855F provision is not the sole and exclusive basis for judicial review of agency action under any fishery management plan. And to that point, again, pre-enforcement review is available for individuals like our clients who actually face the danger of an enforcement action under Section 704 of the APA. But your client was actually voted against this regulation, as I recall from the record. I believe that's correct. And so he was there, so he was clearly knowledgeable about the fact that this regulation had been promulgated. He did not know at that time, I assume, that the government through its inaction was going to let three or four or five years pass before they decided that they were going to enforce the regulation. Why did he have an obligation then to mount his appeal? Your Honor, there were legal challenges to those regulations that were promulgated. And in fact, this court in Loveland v. Locke in 2012 held specifically that the fishery management plan was not a limited access privilege program, which would have come with it had it been an LAPP. Would have carried with it express statutory authority to require industry funding of at-sea monitors. Go ahead. So, Your Honor, the government came to this court and argued that it did not have a limited access privilege program in the form of Amendment 16. And that choice came with consequences, Your Honor, including that the express statutory authority to charge for at-sea monitors was not available under 1853 A.E. But there's a little mismatch here. As I understand, as I read Amendment 16, it expressly said beginning in fishing year 2010, a sector must pay for, to the extent not funded by NMFS, an independent third-party monitoring. And you want to challenge the imposition of a legal obligation to pay, but you want to say that you should be able to hold off the challenge until the government doesn't provide the funding so that the obligation to pay becomes tangibly hitting the wallet. It would seem to me that even if you were right, all that you could challenge was the decision not to continue to providing money. You wouldn't be able to challenge the imposition of the legal obligation to pay, which happened in 2010. Well, Your Honor, I think the language that Your Honor just spoke to about what Amendment 16 actually provided, it was to the extent that we do not, we NMFS, do not pay for it. So the actual effect of that language is it's somewhat vague. It's conditional. Right. And you want to say we should let you postpone your challenge until the government stops paying. I think that there would be, it would be appropriate to take the license of a challenge at the time that that regulation was issued and when the government chose to enforce it. But if you wait to when the government decides not to pay, I think you may only be able to challenge the government decision not to continue to pay as opposed to challenging the imposition of the duty that you would have to pay when the government decides not to pay. Well, Your Honor, I would note that the government has conceded an argument at the district court level that if Mr. Gaethel or another fisherman failed to pay and the NMFS moved against him in an enforcement action, he would be able at that point to raise the challenge that there is no statutory authority for that requirement. And it is a mere small step from that to point out that pre-enforcement review is also available. But under the Magnuson-Stevens Act, it seems to preclude pre-enforcement review other than under the Magnuson-Stevens Act. I disagree, Your Honor. I do not think that the statutory scheme in the Magnuson-Stevens Act is, requires us to assume that 1855F is the sole and exclusive basis for judicial review. Thank you, Counsel. Okay. Thank you. Good morning, Your Honors. My name is Tecla Hanson-Young, and I represent the National Marine Fisheries Service. With me at counsel's table is Mitch McDonald, who is from the NOAA Office of General Counsel. I'd like to address the statute of limitations issue. This suit is untimely. The district There are multiple issues involved in this argument, but the first point I'd like to make is that this suit involves only facial challenges to the regulations and the requirement that industry fund or pay for third-party at-sea monitoring programs. The statute of limitations for this suit ran in 2010, 30 days after the agency promulgated those regulations, and that is because these are facial challenges. To the extent that the plaintiffs wanted to challenge the agency's, you know, notification that the funds had run out, I think that the district court correctly found the latest time that that challenge could have possibly been raised, and we're not conceding that issue here. There might have been jurisdictional problems with this suit as well, but the latest that that challenge could have been brought would have been in May 2015, which was 30 days after the agency approved the sector plan of operations. I find it interesting that throughout this entire procedure, every time something happened, it was in the Federal Register, but this last effect, the one that really made a difference, is not put in the Federal Register, and then you come in here and you now argue that because it wasn't put in the Federal Register, something that was totally in your control, therefore the statute of limitations at the latest ran a few months before. Respectfully, Your Honor, I would disagree that this was the most important notification that the agency issued in 2015. There were several phone calls that were made in the summer of 2015, other emails that were sent in November, continually notifying, informing the public and industry that funding might run out, and even this email wasn't the last email that was sent on this issue. In fact, the agency was able to find that funding had not been used, all funding had not been expended at that point, and was able to extend funding through February 2016. So to the extent that the plaintiffs have raised an argument that this is final agency action, this wouldn't even have been the final email on this subject before the industry was actually made to pay for, or actually had to spend money on these at-sea monitors. And I want to get back to, you know, an issue underlying your question has to do with equities here. The fact is there's nothing inequitable about applying the statute of limitations in this case. The plaintiffs knew about the requirement that they would pay for their own at-sea, third-party at-sea monitoring programs in 2010, and Mr. Gaefel was a member on the council. In fact, he voted against Amendment 16, but for a different reason than the issue presented here. And every year since the agency adopted Amendment 16, the agency has published, as you pointed out, has published framework adjustments in the federal register. There were numerous notifications to the plaintiffs, and even potential lawsuits that could have been brought, challenging those other actions that were published in the federal register that potentially could have got at the funding requirement. And again, we're not conceding that those lawsuits would have been appropriate, but there were multiple other instances where the agency acted outside of this alleged action in this 2015 email. Doesn't the way this program actually operates lend itself to favoritism for the large commercial fisherman as opposed to the single dayboat fisherman as this appellant here is? It strikes me just trying to go through all of this that the real burden, the economic burden, rests on the single fisherman, one boat, as opposed to the conglomerate fisherman, many boats, many permits. Well, I have a couple of answers to that. The first point I'd like to make is that issue is not presented before the court, but let me pass that. I'm interested in it as a practical matter. Yes, as a practical matter. As a practical matter. No, actually. There was a lot of discussion about that issue when Amendment 16 was promulgated, and in fact, the sector program was expanded in Amendments. It had been adopted in Amendment 13 three years before and was expanded in Amendment 16 as a way to provide increased flexibility and economic advantage to single vessels who wanted to obtain exemptions from other fishing requirements and fish in a more economical way. And you also have to keep in mind that this fishery is extremely overfished. It is, it was in a disaster status in the mid-2000s due to extensive overfishing of many of the stocks, I believe 11 of the 20 stocks in this fishery. And so to the extent that there are, you know, economic hardships that flow from these increased restrictions on the fishery, those are a necessary result of the protection measures that the fishery has put in place to prevent overfishing, and that is a statutory mandate. And I'd also like to point out that the plaintiffs haven't disputed that this measure, the at-sea monitoring measure, which is crucial to determining the actual catch of the sector vessels because that is how, primarily how they are regulated. The plaintiffs haven't disputed that that is a necessary and appropriate management measure or necessary to end overfishing. Instead they've argued that there's no statutory authority. So if we get over the statute of limitations issue, then you get to whether you have the authority to propagate the regulation in the first place. That's correct. And so assume for the moment that you get over the statute of limitations issue and they get over it and that issue is before us, what do you have to say about that? Where do you find in the regulation there is, in the underlying statute, there is a separate cut-out which provides a West Coast fishery for these monitors? I don't find anything specific for monitors here. It's just the general take care of the fisheries allows you to do pretty much anything you think is necessary. The first and most important point to keep in mind when thinking about the Pacific fishery and the limited access privilege programs in comparison to this at-sea monitoring program is that those programs are fee collection programs. So the statute specifically authorizes the agency to collect money, fees, from the vessels and use those fees to pay for services, monitoring services that it provides or that it contracts for. That is a huge distinction from this monitoring program here, which is, which is specifically designed, operated, and paid for directly by sectors and their individual member vessels. But in order to do that, don't you have to have some authorization in the statute? Yes, and there are several places in the statute where Congress has provided the agency with authority to do this. The first provision is 1853B8, which expressly authorizes the agency to place monitors on board vessels and make industry pay for the monitors. That would have been an easy thing to do, wouldn't it? Yes, but Congress, I have looked and I have not seen any other statute that actually specifically authorizes the agency to make the industry pay for monitoring. And there are many regulatory schemes where agencies require monitoring and the industry just has to bear the costs of the monitoring. Well, there are probably a million regulations that say thou shalt do X and you have to pay to do it. It doesn't, you know, the regulation just says do X and the background presumption is you have to pay to make it happen, which is why people, one of the reasons people don't like some regulations because it imposes costs on them. Exactly. And there are other regulations in this industry, for example, the Vessel Monitoring Service requirement that requires vessels to install vessel monitoring systems on board which are, which also require satellite subscriptions, monthly fees. Doesn't your client require certain types of nets to be used? Certain nets, certain gears, right. I mean, certain gear limitations. That's sort of inherent in the statutes you have. I think it's less clear that saying that someone has to pay for something seems to me that that's something that would lend itself to statutory authorization or at least something more clear than I find in this statute which says that you can do this. Well, I would submit that if the court were to rule that way, that would potentially have disruptive effect on many other regulations government-wide because there are not, there's, again, as I said, I have not found another statute that actually has that specific language and then the other thing I would say is that even if the court were to find there's some that actually place this into Chevron Step 2 and then the question for the court would be is the agency's interpretation reasonable and permissible? Is it prevented by language in the statute? And the answer is no. There are other provisions authorizing the agency to adopt measures and fishery management plans that are necessary and appropriate for the fishery. There are other provisions authorizing the agency to require at-sea monitoring as a necessary and appropriate conservation measure. There are also provisions that authorize the agency to penalize and affect the vessels for or issue permit violations if they do not pay for monitors on board vessels or if there are, for example, assaults on monitors on board vessels and those provisions expressly extend protections to monitors who are hired under contract. There would be no reason to... Can I take you back to a question Judge Stahl asked earlier? What's the agency's position on whether it can take an action and then not put it in the Federal Register and then claim there's no ability to repeal because it hasn't been published in the Federal Register? How do we solve that conundrum? Well, the agency actually has guidance on what it publishes in the Federal Register and I'm happy to submit a letter to the court with the citation to the guidance if the court would find that instructive. But the guidance basically says there are three kinds of things that we publish in the Federal Register. One is notices, which are informational only. They are not rules. They have no legal effect. Another category is proposed rules, so proposed regulations that are required to be published for notice and comment purposes. And then a third category are rules with legal effect. The agency has discretion as to whether to publish documents in the Federal Register and this, if you look at the guidance, this sort of informational email is not, doesn't squarely fall into the category of any of the notice kinds of documents that would be... Help me out on that. As a notice? Yeah. So the guidance gives certain examples of what might be a notice. So the agency would publish notice of regional council meetings in the Federal Register or notice of an environmental impact statement or things like that. I think there's no question the agency could have published this email as a notice, but earlier that year in May, the agency had already published in the Federal Register its rule approving the sector operations plans that had provisions in place for an industry-funded at-sea monitoring program. So at that point, the industry had developed their plans. So the information was already out there, is what you're saying? Right. In early, in earlier 2015. And then in that, in that publication in early 2015, the agency informed industry that at some point in 2015, the funding would run out and it committed to providing information to industries so that they could plan for when the funding would run out. And the email was simply that. And I would also add another feature of why this email isn't reviewable. I mean, not only does it have no legal effect or really no in the email, but it also, it also doesn't, it didn't exhibit any of the signs of sort of discretion or rulemaking that you would typically associate with an action that would be judicially reviewable. In other words, the agency wasn't deciding whether to make funding available or not to industry. It had contract, it had funds that were committed to contracts that it was using to pay for at-sea monitors. And it was simply determining based on the number of trips that were being taken that year and the number of monitors that were being placed, it was simply determining and estimating when the funds in those preexisting contracts would be used up. So there's no, I mean, when you, when you really consider this email and what it was doing, it really has none of the hallmarks of a regulatory event that would be judicially reviewable. So with that, if the Court has no other questions, I would ask the Court to affirm the judgment of the District Court. Thank you. Thank you. Your Honors, just very quickly to address the statutory authority issue. The Government's Council cites to the Necessary and Appropriate Provision, which is Section 1853B14. Your Honor, if that provision could bear the full weight of permitting the industry funding requirements throughout the fishery, then this Court could stop reading after that provision and the Congress could have stopped writing. But the Congress did not. The Congress specifically enacted several express provisions under certain circumstances, limited circumstances that allowed the Government to require industry funding of at-sea observers and monitors. And your assistant says the point of the distinction is that those were provisions allowing the Government to collect fees, whereas this is a different kind of provision. It simply says do something, and by the way, you're going to have to pay for doing it. Your Honor, it's a little different than that. It says there shall be at-sea monitors and we will pay for them until we don't, and then you must. Yeah. So, your Honor, I think that it's a distinction without a difference. The fees versus So if they had simply said, you must have monitors on board, period, there would be no question that the time to challenge that would have been the 30 days from that provision. But what extends the period of time is the, call it the act of grace, saying we've got some money and we'll pay for it as long as the money is there. That is the effective difference. Well, two things, your Honor. One is the availability of pre-enforcement review once the actual requirement is in effect. I would note also, your Honors, very quickly that the Government itself has taken the position in litigation and in rulemaking that the Anti-Deficiency Act and the Miscellaneous Receipts Statute precluded from creating observer programs and requiring the industry to bear the cost. That's in the Anglers Conservation Network case in the District Court of D.C. in 2015, your Honor, which is not to suggest that there is stopped, but it's a pretty good argument and they've adopted it. If there are no more questions, your Honor.